### CITY OF DURHAM v. SOUTHERN RY. CO.

#### (Circuit Court, E. D. North Carolina. February 16, 1903.)

**1. RAILROAD RIGHT OF WAY—ABANDONMENT—EFFECT OF CONVEYANCE.**

If a conveyance by a railroad company of a portion of its right of way to another company be regarded as an abandonment of its easement, such abandonment can only be taken advantage of by the owner of the fee, and cannot avail a city which claims the land for public purposes through a dedication made by a lessee of the railroad company.

**2. SAME—ADVERSE POSSESSION—OCCUPATION BY CITY.**

Possession by a city of land constituting a part of the right of way of a railroad, under a dedication made by a lessee of the road, can give the city no rights as against the lessor after the lease has terminated, nor can it acquire any such rights by adverse possession in any case under Code N. C. § 150, which provides that no railroad company shall be barred by limitation of its title or right in any right of way by reason of its occupation by another.

In Equity.

J. S. Manning, R. W. Winston, J. Crawford Biggs, and W. H. Day, for complainant.

Fab. H. Busbee, Charles A. Price, and W. A. Henderson, for defendant.

PURNELL, District Judge. Complainant commenced its action in the superior court of Durham county on July 11, 1899, and filed a complaint, which, after formal allegations of corporate existence, etc., alleges that it, the city of Durham, is the owner and entitled to the possession of a certain strip of land on the north side of the North Carolina Railroad, a part of what is designated and known as "Peabody Street" in the city of Durham, N. C. The form of the pleading is similar to an action of ejectment, but there is no objection to the form of the pleadings, nor was there any serious discussion in the argument as to such form, whether it is an action in ejectment, or plaintiff claiming possession in an action to remove cloud upon title or restrain a threatened trespass, etc., but all were incidentally discussed; technical objections being waived, and a disposition by all to present the real question at issue. Plaintiff claims to be rightfully in possession of the locus in quo, a strip of land on the north side of the right of way of the North Carolina Railroad Com-

¶ 1. Abandonment or forfeiture of railroad right of way, see note to Townsend v. Railroad Co., 42 C. C. A. 576.

pany, about 32 feet wide, and extending from Roxboro street to Cigarette street, now used by another railroad company as a right of way. This will be better understood from the plat hereto attached and exhibited.

IMMATERIAL PARTS OMITTED

The Southern Railway Company answered, and sets up several defenses. By stipulation of counsel records were admitted and used as evidence in lieu of depositions taken in the usual form, which cause, being set down for hearing, was argued. From the pleadings and records used, eliminating what is not regarded as essential, the following chronological statement of facts only is necessary to understand the contentions, though many others were referred to in the argument:

(1) In 1852 the North Carolina Railroad was chartered by act of the Legislature, and soon thereafter built. Exactly when the track on the land now Peabody street, in the city of Durham, was laid, or the right of way thereon acquired, does not appear, but probably about 1854. There was no city or town of Durham at that time, and the land now the right of way was woods, old field, or a road. There were no conveyances, condemnation proceedings, or other evidence of how this right of way was acquired, but it is stated to have been under section 29 of the charter (Act 1852), which reads as follows:

"That in the absence of any contract or contracts with said company, in relation to lands through which the said road or its branches may pass, signed by the owner thereof or by his agent, or any claimant or person in possession thereof which may be confirmed by the owner thereof, it shall be presumed that the land upon which the said road or any of its branches may be constructed, together with a space of one hundred feet on each side of the center of said road, has been granted to the said company by the owner or owners thereof; and the said company shall have good right and title thereto, and shall have, hold and enjoy the same as long as the same may be used for the purposes of said road, and no longer, unless the person or persons owning the said land at the time that part of the said road which may be on the said land was finished, or those claiming under him, her or them, shall apply for an assessment of the value of said lands, as hereinbefore directed, within two years next after that part of the said road, which may be on said land was finished; and in case the said owner or owners, or those claiming under him, her or them, shall not apply within two years next after the said part was finished, he, she or they shall be forever barred from recovering said land or having any assessment or compensation thereof: provided, nothing herein contained shall affect the rights of femes covert or infants until two years after the removal of their respective disabilities."

(2) In 1871, the North Carolina Railroad Company leased for a term of 30 years all its property, franchises, etc., to the Richmond & Danville Railroad Company, which lease was adjudged by the Supreme Court of the state to be valid.

(3) In 1889 complainant herein commenced an action in the superior court ("Chatham County Case") against the North Carolina Railroad Company and the Richmond & Danville Railroad Company for a purpose similar to the one at bar, in which suit a judgment was rendered in favor of the North Carolina Railroad Company against the city (the town of) Durham, and in favor of the city of Durham against the Richmond & Danville Railroad Company. The gist of this judgment was that the Richmond & Danville Railroad Company had dedicated the strip of land to the city of Durham and the public as a street, and an injunction was entered restraining the Richmond & Danville Railroad Company from trespassing thereon

with its tracks or otherwise. The jury having found the issues submitted in favor of the North Carolina Railroad Company, judgment was entered in its favor "that it go without day, and recover its costs," etc. This judgment was at fall term of Durham superior court, 1891, after the cause had by appeal been to the state Supreme Court. These judgments were based upon findings of fact by the jury upon issues submitted to them that the town (now the city) of Durham did not, in pursuance of the provisions of its charter, condemn for use as a street the strip of land known as "Peabody Street;" that the town (now city) of Durham and the public had not for 20 years prior to the beginning of the action (June 17, 1889) had the exclusive use and occupancy of said street with the knowledge and acquiescence of defendants (the North Carolina and Richmond & Danville Railroad Companies); that the Richmond & Danville Railroad Company had, but the North Carolina Railroad Company had not, dedicated to the plaintiff, the town (now the city) of Durham, and the public the land described in the complaint for the purposes of a street; that the Richmond & Danville Railroad Company was, after the commencement of the action, unlawfully invading the possession of the plaintiff, "the town (now city) of Durham."

(4) Pending this suit the Oxford & Clarksville Railroad Company commenced proceedings of condemnation under the provisions of the Code against the Richmond & Danville and North Carolina Railroad Companies; and while the injunction of the state court was in force restraining the Richmond & Danville Railroad Company from trespassing, etc. (pending these proceedings), others of like import were commenced by another railroad (the Durham & Northern), and by action of the municipal officers of the city of Durham permission was granted for it, the Durham & Northern Railroad Company, to lay and construct its tracks on the locus in quo, Peabody street, from Roxboro to Cigarette street, which tracks were laid; and to obtain a right of way on Peabody street over the right of way of these roads, one as lessor and the other as lessee. On the 29th of March, 1890, the North Carolina Railroad Company, for a consideration of $5,000, executed a deed to the Oxford & Clarksville Railroad Company for the right of way sought to be condemned, and the Richmond & Danville Railroad Company, for a consideration of $5, executed a deed of similar import.

(5) Afterwards the Oxford & Clarksville Railroad was sold, with all its franchises, etc., under a decree of court, and purchased by the Southern Railway Company, which sale was duly confirmed.

(6) In 1895, the North Carolina Railroad Company leased for a term of 99 years all its property, franchises, etc., to the Southern Railway Company, incorporated and organized under the laws of Virginia, which had previously acquired the rights, etc., under the lease to the Richmond & Danville Railroad Company (1871). This lease (1895) in its terms provides that the lease of 1871 shall terminate at 12 o'clock at midnight on September 11, 1895, but it has been held this lease of 1895 was an extension and renewal of the lease of 1871.

The statute law of North Carolina is ample for the purposes of

121 F.—57

invoking the exercise of eminent domain in the condemnation of land for public streets by municipal authorities. There is not only no evidence of such proceedings ever having been taken by the complainant, but it is admitted in the argument that no such proceedings have ever been instituted. It appears by the judgment of the state courts (1891) that the city of Durham at that time was in possession of the locus in quo by a dedication made to it and the public by the Richmond & Danville Railroad, and under no other claim. This was a judgment by a court of competent jurisdiction, which judgment is binding not only on the parties to the suit, but on this court. The judgment provided that the city of Durham had no claim or possession of the locus in quo as against the North Carolina Railroad Company. The consideration of the case must, therefore, start from this point, and, unless the North Carolina Railroad Company has done some act since this judgment was entered, the city has no right to possession as against this corporation.

An examination of section 29 of the charter above cited does not justify the narrow construction contended for by counsel. While this court is not called upon to construe this section, except as germane to a decision of this case, a broader construction would seem to be a presumption to vest in the North Carolina Railroad Company not only an easement to terminate when the right of way ceased to be used, but a right to use that easement or right of way indefinitely. The section provides "it shall be presumed that after two years the space of 100 feet on each side of the center of said road has been granted to the said company by the owners thereof and the said company shall have good right and title thereto." But, conceding this was a mere grant, by operation of the statute, of a right of way as long as it shall be used by the railroad company as prescribed, and "no longer," no one could avail themselves of a reversion except the original owner or owners. It is contended that the deed from the North Carolina Railroad Company to the Durham & Northern Railroad (4) is an abandonment of this right of way by the North Carolina Railroad Company, and this seems to be the only evidence of an intention of an act on the part of this corporation since the judgment of the state court in 1891 which affects this right of way. This contention presents some interesting questions of law for which high authority is cited; among others, the opinion in Newton v. Mfg. Ry. Co. (C. C. A.) 115 Fed. 781, but that was a suit by the owner of the fee. It was under the laws of Ohio for land condemned for park purposes, and it was held that this was a limited easement, and on the abandonment of such easement the land reverts to the owner from whom it was granted, or his successor in title; and the gist of the opinion is that on the condemnation of the right of way for a railroad company across the park it was imposing upon the fee an additional easement or burden, for which the owner, and not a third party, is entitled to compensation. The authorities sustaining this position are ample, but the decision is not applicable to the case at bar. If the owners of the fee or their successors in title were making a claim, it would present an entirely different question from that here involved. Here the city

of Durham is attempting to stand in the shoes of the original owners or their successors in title, without evidence of a right to do so, refusing or neglecting to avail itself of ample provisions of law for condemnation proceedings, and attempting to make permanent as against the North Carolina Railroad Company by suit what it held by dedication, under the judgment of the state courts, by its lessee of the owner of the right of way, against whom the state court held it had no right of possession. The court is urged to decide whether the lease of 1895 was a new lease or an extension of the lease of 1871. This is not essential, and can have no bearing in the determination of the controversy in this suit. The complaint asked for an injunction against threatened "trespass" after the termination of the lease of 1871, to wit, 1901. Whether this lease—the 30-year lease of 1871—was extended by the lease of 1895, or whether it terminated on the execution of that lease, can make no difference. The rights acquired by third parties under the Richmond & Danville Railroad lessee would terminate with the end of that lease, and that lease has certainly now terminated by limitation. The Southern Railway Company is in possession of the property of the North Carolina Railroad, together with all its rights and franchises, under the lease of 1895, and by no other authority. The six years from September 11, 1895, to September 11, 1901, whether an extension of the old lease or a new lease, would not affect rights acquired by third parties under the former lease; but for all purposes the lease of 1871 is now dead, and the Richmond & Danville Railroad Company eliminated; rights acquired under it terminated, and new rights acquired. So, whatever dedication was made by the Richmond & Danville Railroad Company terminated with the lease, whether that was in 1895 or 1901. The North Carolina Railroad Company at one or the other of the dates (and it can make no difference) was revested with whatever title or claim or right it had in and to the property on the termination of the lease. The claim of the city of Durham being, as has been seen, under a dedication by the Richmond & Danville Railroad Company, and the injunction issued in the Chatham county suit, it was a limited possession, and in no way affected the rights of this corporation, the North Carolina Railroad Company. No statute of limitations would run during this period, nor would a plea of the statute be available. The possession was not adverse, but by virtue of the injunction and said limited dedication; and section 150 of the Code of North Carolina provides:

"No railroad, plank road, turnpike or canal company, shall be barred of, or presumed to have conveyed, any real estate, right of way, easement, leasehold, or other interest in the soil which may have been condemned, or otherwise obtained for its use, as a right of way, depot, station house or place of landing, by any statute ·of limitation or ·by occupation of the same by any person whatever."

Discussing this section, the Supreme Court of North Carolina, through its chief justice, has said in Railroad Co. v. McGaskill, 94 N. C., at page 754:

"The statute does not require the occupation and direct use of every foot of the condemned area for building embankments and the like, but pre-

serves the property in the company so long as the road runs over the land and is operated by the company. A permissive use of it by another, when no present inconvenience results to the company, is not a surrender of rights of property, and, indeed, to expel an occupant under such circumstances would be a needless and uncalled for injury."

Great stress is laid on the deed from this corporation, the North Carolina Railroad Company, to the Oxford & Clarksville Railroad Company as evidence of an intention of abandonment of the right of way. As has been said, if this be true, it is a condition of which the owners of the fee alone can take advantage; and, if this be evidence of an intention of abandonment, it is equally true that the grant from the municipal officers of the city of Durham to the Durham & Northern Railroad Company to use Peabody street as a right of way is also evidence of an intention of abandonment of whatever easement for a street the said city might have had on this land. In short, it is a principle the application of which cuts both ways; and the North Carolina Railroad Company, having had a previous right of way over the land, would be in a better position to claim abandonment on the part of the city. Whether this deed be evidence of abandonment or not presents interesting legal questions, which this court does not feel called upon to decide. It is neither germane nor essential to a determination of the cause at bar, for, as before said, if it is evidence of an intention to abandon, the city of Durham is not in a position to take advantage of it, either by being the owner of the fee, condemnation proceedings, or in any other way. True, the city has expended funds in the improvement of Peabody street, possibly before and since the judgment of the state court in 1891; but it did so with full knowledge of its claim of possession and when the same would terminate.

The form of the action was admittedly defective in this as a court of chancery, but, as counsel have argued the case on its merits, it should be so decided, and is so considered without adverting to mere form or technical objections not raised or pressed on the hearing or by motion to reform the pleadings. There is no evidence of a threatened irreparable wrong, or the absence of an adequate legal remedy.

For the reasons hereinbefore stated, and others moving the court, it is considered, ordered, adjudged, and decreed that the bill, complaint as originally filed, and all proceedings subsequent thereto and thereunder be dismissed; that the injunction herein be vacated and dissolved; and the city of Durham pay the costs to be taxed by the clerk of this court. A final decree will be entered to this effect, and the case is held for the assessment of damages incurred by reason of the issuance of the injunction herein, and for no other purpose.